**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| IN RE<br>JEFFREY J. PROSSER<br>    Debtor | Bankruptcy 06-30009<br>Chapter 7<br>**Related to** Doc. No. 1297, Motion to Compel Jeffrey J. Prosser to Respond to Questions Pursuant to Section 341 of the Bankruptcy Code and for Sanctions filed by Rural Telephone Finance Cooperative |
| IN RE<br>INNOVATIVE COMMUNICATION CORPORATION<br>    Debtor | Bankruptcy No. 07-30012<br>Chapter 11 |
| Stan Springel, Chapter 11 Trustee in Case No. 07-30012, and James P. Carroll, Chapter 7 Trustee in Case No. 06-30009,<br>    Plaintiffs<br>v.<br>Jeffrey J. Prosser,<br>Dawn Prosser, Justin Prosser.<br>Michael J. Prosser, Sybil G. Prosser<br>Michelle LaBennett, Lyndon A. Prosser,<br>Lyndon A. Prosser<br>    Defendants | Adv. No. 07-3010<br><br>**Related to** Doc. No. 124, Motion to Compel Compliance with Court Orders and to Compel Production of Documents filed by Stan Springel, Chapter 11 Trustee |

**MEMORANDUM OPINION[1]**

The matters before the court are defendant Jeffrey J. Prosser's and Dawn Prosser's

---

[1]This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

1

oppositions to motions to compel.[2]

**<u>Introduction</u>**

In Mr. Prosser's individual Chapter 7 case, the Rural Telephone Finance Cooperative ("RTFC") filed a motion to compel Mr. Prosser to answer questions at the §341 meeting.[3] At Adversary No. 07-3010, filed in Innovative Communication Corporation ("New ICC"), Case. No. 07-30012, the Chapter 11 Trustee in New ICC, filed a motion to compel the Prossers to produce documents. Adv. Doc. No. 124 . The court entered orders granting the motion to compel production of documents.[4] Thereafter, Mr. Prosser and, later, Mrs. Prosser, asserted the Fifth Amendment. The basis of Mr. Prosser's assertion of the Fifth Amendment privilege is the fact that a Grand Jury has been convened to investigate the affairs of the Virgin Islands Community Bank ("VICB") which Mr. Prosser formerly owned and of which he was the major stockholder.

Mrs. Prosser's assertion of the Fifth Amendment privilege relates to the document production motion in Adversary 07-3010 filed in the New ICC case (07-30012). However, there is nothing in her response to the document production request (Adv. Doc. No. 169) that indicates why or how self-incrimination might be implicated. In her answer to the complaint, Adv. Doc. No. 175, filed after the blanket assertion of the privilege, Mrs. Prosser did not assert the

---

[2] *See* order of September 7, 2007, Doc. No. 810, unsealing documents.

[3] The Chapter 7 and Chapter 11 Trustees and the Greenlight Entities joined RTFC's motion. *See* Doc. Nos. 1319, 1332, 1339.

[4] *See* Adv. Doc. No. 169 regarding oral order of court and Adv. Doc. No. 178. At that time motions with respect to right to jury trial and the assertions of the Fifth Amendment were not addressed. The right to jury trial was resolved by Memorandum Opinion and Order dated May 7, 2008, Adv. Doc. No. 251. A motion for leave to appeal and an appeal from that decision was filed by Dawn Prosser on May 14, 2008. Adv. Doc. Nos. 260, 261, 267.

2

privilege. Instead she stated that "the claims and damages alleged . . . were in all or in part a proximate result of the acts or omissions of a third party or parties for which Dawn Prosser is not liable or responsible." Adv. Doc. No. 175 at 2, Fifth Affirmative Defense. In a "Brief in Support of Dawn Prosser's Assertion of 5th Amendment," Adv. Doc. No. 182,[5] Mrs. Prosser contends that the mere act of producing records is protected by the Fifth Amendment but the protection is not quite that broad. We first address the §341 issue and the document production request as they pertain to Mr. Prosser.

**A.**   **Jeffrey Prosser**
   **1.**   *Objection to Motion to Compel Response to Questions Pursuant to §341 Meeting in Case No. 06-30009*

Mr. Prosser asserted his Fifth Amendment privilege against self-incrimination with respect to every question except those concerning his name and current address. He refused to answer such questions as whether he had ever "resided at a location called Orange Grove in St. Croix," Case No. 06-30009, Doc. No. 1349, Exhibit D (Examination of Debtor Jeffrey J. Prosser, on Friday, January 25, 2008), at 6, or whether it was his signature on the Declaration Concerning Debtor's Schedules filed with respect to his voluntary petition. *Id*. at 11.

We note that in his opposition to RTFC'S motion to compel Mr. Prosser asserted the Fifth Amendment with respect to questions about the following:

- the type of business New ICC was involved in;
- whether Mr. Prosser was ever paid wages or other compensation by any of the companies that he owned or controlled;
- whether Mr. Prosser was ever paid wages or other compensation by ICC;
- whether he had control over any banks outside the U.S. or the U.S. Virgin Islands.

---

[5]This document was filed as "Supplemental Motion/Brief in Support of Dawn Prosser's Assertion of 5th Amendment," even though it is not a motion. In addition, the Brief is not linked to any related pleading.

3

Doc. No. 1349 at 10-11. There has been previous testimony in this court by Mr. Prosser with respect to the first three questions and he has provided no reason why answering them now would tend to incriminate him. *See, e.g.*, Case No. 06-30009 (Prosser), at Doc. No. 324, Transcript of 1/19/07; *id*. at Doc. No. 186, Transcript of 12/11/06. However, it is not apparent why the questions need to be answered again.

It is the function of the trial judge to decide whether providing the information sought or giving an explanation of why it cannot be provided would support a criminal conviction or "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *U.S. v. Zappola*, 646 F.2d 48, 52-53 (2d Cir. 1981), citing *Hoffman v. U.S.*, 341 U.S. 479, 486-87 (1951). Mr. Prosser admits that "[i]n the bankruptcy context, invocation of the privilege may be done by filing an objection to the requested information . . . . After the objection has been filed the court must make a 'particularized inquiry into the privilege'." Case No. 06-30009, Doc. No. 1349, at 6-7, ¶ 15. However, "[b]lanket assertions of the Fifth Amendment privilege are prohibited." *In re Cassandra Group*, 338 B.R. 600, 604 (Bankr.S.D.N.Y. 2006). As noted above, Mr. Prosser asserted the Fifth Amendment to every question other than his name and address.

Mr. Prosser relies in part on *In re Jacques*, 115 B.R. 272 (D.Nev. 1990), for the proposition that a debtor does not waive the Fifth Amendment privilege by testifying at an earlier creditors' meeting which Mr. Prosser did in the chapter 11 phase of his case. However, the court in *Jacques* held that because the debtor was entitled to invoke the Fifth Amendment at the §341, he should not be held in contempt for refusing to answer questions and could also assert the Fifth Amendment with respect to questions concerning the financial statements and

4

schedules that are required to be submitted under the Bankruptcy Code. We agree with the *Jacques* analysis and, for this reason, the RTFC'S request for sanctions in connection with Mr. Prosser's refusal to answer questions is denied. However, we note that, in some circumstances, the court may draw negative inferences if Debtor asserts the Fifth Amendment. *U.S. v. Stelmokas*, 100 F.3d 302, 306 (3d Cir. 1996), *cert. denied* 520 U.S. 1242 (1997); *U.S. v. Lavin*, 942 F.2d 177, 182, n.7 (3d Cir. 1991). *See also In re Carp*, 340 F.3d 15 (1st Cir. 2003)(applying the principle to bankruptcy cases).

In *In re Mudd*, 95 B.R. 426 (Bankr.N.D.Tex. 1989), the court held that the debtor had waived his right to assert the Fifth Amendment because he had testified at several previous creditors' meetings on the same subject matter. As a result, he could not refuse to answer more specific questions on the same subjects. In the matter before us we have been provided only with the §341 transcript of January 25, 2008, and the Trustee has not identified for us which questions, if any, Mr. Prosser answered at his previous §341. Accordingly, we cannot determine from the record before us whether all assertions are appropriate.

Mr. Prosser attempts to distinguish *Mudd* from his case because in *Mudd* the debtor had been advised by counsel that he could assert the Fifth Amendment but he testified anyway. We do not know whether or not Mr. Prosser was advised of his Fifth Amendment privilege in connection with prior testimony he gave, both at a §341 hearing and at the hearing on the motion to convert his Chapter 11 to a Chapter 7. Based on the assertions of counsel at the argument on this motion, we assume he was not previously advised, but that is not dispositive. We note that the court in *Mudd* held that if it was "not 'evident from the implications of the question . . . that a responsive answer . . . or an explanation of why it cannot be answered might be dangerous

5

because injurious disclosure could result,'" the debtor had to establish that "'some credible reason why a response would pose a real danger of incrimination.'" 95 B.R. at 431, quoting *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir.), *cert. denied* 449 U.S. 1025 (1980). In addition, it does not appear that a grand jury investigation was underway when Mr. Prosser testified at the earlier §341 meeting or in court. The commencement of a grand jury investigation allegedly concerning the Virgin Islands Community Bank changes the landscape as far as Mr. Prosser is concerned so his assertion of the Fifth Amendment with respect to some questions arguably could be appropriate. For the reasons stated herein we are not able to make that determination.

Nonetheless, with respect to such questions as whether he lived at a certain address Mr. Prosser has failed to establish why answering would pose a "real danger of incrimination." *Martin-Trigona*, *supra*, 634 F.2d at 360. In those instances, the propriety of application of the Fifth Amendment is not readily apparent, particularly where he has testified to that information before and/or identified certain residences as exempt homesteads. Having said this, however, if the Trustees can obtain the information from the public record we will require them to do so. If information is not obtainable, the Trustees can identify to this court which of the questions at the January 25, 2008, §341 remain unanswered and then Mr. Prosser will have to justify his refusal to answer those questions.

Some questions asked at the §341 are those to which the Trustee could get answers from other sources. For example, counsel for the Chapter 7 Trustee asked Mr. Prosser the purchase price of certain real estate and whether Mr. Prosser knew when the last mortgage payment was made. Doc. No. 1349 , Exhibit D, Examination of Debtor on January 25, 2008, §341 meeting, at

6

23. Regardless of whether the answer to this question could even arguably tend to incriminate Mr. Prosser, the Trustee should be able to obtain this information from the mortgagee or from other records to which the Trustee has access. Mr. Prosser asserted his Fifth Amendment privilege with respect to the purchase price as well but the Trustee should be able to obtain the purchase price information from the public records and the payment history from the mortgagee. In another instance counsel for the Chapter 7 Trustee asked Mr. Prosser to explain why he claimed a possessory interest in certain real estate which was listed on his Schedule A but not in his Amended Schedule A. Mr. Prosser refused to answer on Fifth Amendment grounds. Mr. Prosser's refusal to explain this discrepancy seems quite attenuated from any Grand Jury investigations of the VICB. However, if Mr. Prosser's assertion may tend to implicate him in a crime then the assertion of the privilege may be appropriate. Clearly, some explanation in the nature of a "credible reason" for its assertion is required.[6] *See In re Mudd, supra,* 95 B.R. at 431.

In short, we find that to the extent the Trustee or the RTFC can obtain the answers they sought at the §341 meeting from another source, they will have to do so. The Trustee or the RTFC may file a specific list of questions from the §341 meeting, the answers to which are not available from another source and to which Mr. Prosser asserted the Fifth Amendment. The

---

[6]Mr. Prosser's bankruptcy schedules were amended several times, due in part to improper claims of exemptions. In one instance Mr. Prosser had claimed a 50 percent ownership interest in certain wines. His attorney represented to the court that Mrs. Prosser also claimed an interest in them. After one round of amended schedules, the "50 percent" designation disappeared. *See* Case No. 06-30009, Doc. No. 1349, Exhibit D at 29. At the January 25, 2008, §341 meeting Mr. Prosser was asked by counsel for the Chapter 7 Trustee whether deletion of the reference to "50 percent" meant that Mr. Prosser was claiming a 100 percent interest in the wines. Mr. Prosser asserted the Fifth Amendment with respect to that question. However, his attorney stated that it was counsel's understanding that Mr. Prosser continued to claim a 50 percent interest in these assets. *Id.* at 29-30.

7

court will then address those specific questions one by one.

If Mr. Prosser refuses to answer questions he previously answered or that concern the same subject matter, he may have waived the Fifth Amendment privilege with respect to those questions unless he establishes with respect to each how answering same would result in "injurious disclosure." *In re Mudd*, 95 B.R. 426, 431 (Bankr.N.D.Tex. 1989). *Cf. In re DG Acquisition Corp.*, 208 B.R. 323, 327 (Bankr.S.D.N.Y. 1997)("A waiver of the Fifth Amendment privilege against self-incrimination may be inferred from a witness' course of conduct or prior statements concerning the subject matter of the case"). Neither he, the RTFC nor the Trustee has identified to the court specific questions as required. We cannot make that determination on the present record.

### 2. *Mr. Prosser's Assertion of Privilege With Respect to Motion to Compel Document Production in Adv. No. 07-3010*

The complaint in Adversary No. 07-3010 which was filed in Case No. 07-30012 (New ICC) seeks turnover of assets purchased with funds of New ICC that are allegedly held by Mr. Prosser, his wife and family members.

Mr. Prosser acknowledges that the privilege does not apply to entities, i.e., ICC, New ICC or the VICB. *See Doe v. U.S.*, 487 U.S. 201 (1988). He points out that New ICC records, which are, or should be, in the possession of the Trustee, need not be produced by him and his own records "may tend to be self-incriminating." Adv. Doc. No. 181, Supplemental Brief in Support of Jeffrey J. Prosser's Response in Opposition to Compel Compliance with Court Orders and Request for Continuance, at 4. The Chapter 11 Trustee, who is in possession of the corporate Debtors, has not asserted that he does not have access to corporate documents. There is nothing in the record establishing that Mr. Prosser has possession of corporate records. If he

8

has possession, however, there is likewise nothing in the record to establish how he will be harmed by producing them.  Accordingly, to the extent corporate records can be obtained from the corporate Debtors, the Chapter 11 Trustee has an alternative source and Mr. Prosser need not produce them at this time.  To the extent there is no alternative source and Mr. Prosser has possession of corporate records, he must establish, as to each such document, how the privilege applies.

Not all the document production requests directed to Mr. Prosser seek corporate records, however.  Adv. Doc. No. 124, Exhibit A.

*Document Request 1*

This request seeks

> All Documents reflecting, evidencing, or otherwise concerning any Communication between or among you and any person (including, but not limited to, one or more members of the Prosser Family, but excluding your legal counsel) concerning or relating to any property of the Debtor's [i.e., New ICC] bankruptcy estate specifically including, but not limited to, the Property.

Adv. Doc. No. 124, Exhibit A, at 5, ¶ 1.  Property is defined therein as

> all personal property, including, but not limited to, jewelry, art, automobiles, personal watercraft, fine wine, silverware, negotiable and non-negotiable securities, season tickets to sporting events and related seat licenses, country club memberships, clothing, rugs, furniture, antiques, and other home furnishings and luxury goods, (i) that was (A) purchased by, on the behalf of, or at the direction of one or more members of the Prosser Family; or (B) transferred by gift to you from any member of the Prosser Family or from you to any member of the Prosser Family; or (C) otherwise transferred to or from you; and (ii) that was purchased, or that you reasonably believe was purchased, for consideration of $2,500 or more.

*Id*. at 3, ¶ H.  The request as stated is not limited to property or documents of New ICC or its estate.  To the extent that the records the Chapter 11 Trustee seeks are available from New ICC,

9

the Trustee must pursue that avenue first. If information is not available, a specific request can be made to Mr. Prosser.

*Document Requests 2 through 6*

These requests seek inventories, appraisals, insurance policies and the like identifying or describing any of the Property, its location, value, purchase price, evidence of ownership, receipts, etc., concerning transfer or disposition of Property, documents that concern source of funds used to acquire the Property, and documents such as credit card and other account statements concerning purchase of any of the Property. *Id.* at 5-6, ¶¶ 2-6. The ruling applicable to Document Request 1 is appropriate with respect to these requests as well. Insofar as credit card, bank and other account statements and information are concerned, efforts can be made, first, to obtain them from the card issuer, bank, and other vendors or servicers. If the Chapter 11 Trustee still cannot get what he needs, he can identify specific items or documents and direct a request to Mr. Prosser.

*Document Request 7*

The Chapter 11 Trustee seeks "[a]ll Documents that support any of your defenses to claims asserted in the Complaint." This request is exceedingly broad as are the defenses asserted in Mr. Prosser's answer to the complaint. We cannot determine from the record (a) whether any documents exist or even could exist with respect to at least some of the defenses or (b) whether the Fifth Amendment could be implicated with respect to any of the defenses.

*Document Request 8*

The Chapter 11 Trustee seeks "[a]ll Documents evidencing any funds, property, benefits, privileges, rights of access or usage, or other things of value you received from (a) the Debtor

10

(New ICC) or (b) anyone else where such item was paid for by the Debtor [New ICC]." The Trustee has not alleged that New ICC's records lack this information. To the extent documents cannot be found or records concerning the requested items cannot be obtained from New ICC, the Trustee can make a further request directed to Mr. Prosser specifically identifying what is missing.

If the Trustee establishes that Mr. Prosser has possession as custodian of corporate records, the question becomes "whether a compelled communication is testimonial for purposes of applying the Fifth Amendment," and that depends on the circumstances. *Doe v. U.S.*, 487 U.S. 201, 214 (1988), The Supreme Court in *Doe v. U.S.* examined whether compelling the defendant to produce records had "testimonial significance." 487 U.S. at 215. This determination is, of course, factually driven and the record is not in a posture such that the question is ripe.

Mr. Prosser cites *Curcio v. United States*, 354 U.S. 118 (1957), for the proposition that a custodian "undertakes the obligation to produce the books of which he is custodian . . . [b]ut he cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony." 354 U.S. at 123-24. This case does not support Mr. Prosser's refusal to turn over documents of New ICC, even if those documents might tend to incriminate him. However, on the record before us, it has not been established that Mr. Prosser has any documents.[7]

---

[7]*Curcio*, 354 U.S. at 125 n.4, cited as the leading case *U.S. v. Austin-Bagley Corp.*, 31 F.2d 229, 233-34 (2d Cir.), *cert. denied* 279 U.S. 863 (1929), a case in which a corporation's secretary-treasurer, charged with conspiracy to violate the national Prohibition Act, was compelled to identify corporate minutes. The Court of Appeals for the Second Circuit held that
(continued...)

Mr. Prosser also cites *U.S. v. Hubbell*, 530 U.S. 27 (2000), to further support his position that the <u>act</u> of producing records in his possession is protected by the Fifth Amendment. The case is not on point as cited by Mr. Prosser. In *Hubbell*, the defendant had been granted immunity in a prior prosecution in exchange for disclosure of broad categories of documents in response to a subpoena. The Supreme Court held that the prior grant of immunity precluded a subsequent unrelated prosecution but only to the extent that the <u>testimonial</u> aspect of the document production was a first and necessary step in the discovery of evidence with respect to the second prosecution. The Court in *Hubbell* distinguished a "sworn communication . .. that relates either express or implied assertions of fact or belief." 530 U.S. at 35. Further, the fact that incriminating evidence is the "byproduct of obedience to a regulatory requirement, such as . . . maintaining required records, . . . does not clothe such required conduct with the testimonial privilege." *Id*[8]. Compelled production is permissible even though the documents contain

---

[7](...continued)
the corporate documents could be compelled even if entries therein would be incriminating to the accused. Authentication of the documents, however, was another matter and so "it might be possible to force their production, and yet their possessor be protected from proving by his oath that they were what they purport to be." *Curcio*, 354 U.S. at 125 n.4, quoting *United States v. Austin-Bagley Corp.*, 31 F.2d at 233-34. Nonetheless, the court in *Austin-Bagley* concluded that "testimony auxiliary to the production is as unprivileged as are the documents themselves. By accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own." *Curcio*, 354 U.S. at *id*.; *Austin-Bagley Corp.*, 31 F.2d at *id.* The court held that the custodian could not be compelled to testify orally as to the whereabouts of records that were not produced when that required him to "disclose the contents of his own mind." *Curcio*, 354 U.S. at 128. The court further noted that under the circumstances in *Curcio* there could have been proceedings initiated against the custodian for his failure to produce the records pursuant to the subpoena. 354 U.S. at 128 n.7. The parameters set by the Supreme Court in *Curcio* should be considered by the parties if these proceedings get to the stage where *Curcio* is pertinent.

[8]The Supreme Court in *Hubbell* elaborated further:
(continued...)

incriminating assertions of fact on the basis that the creation of the documents was not compelled within the meaning of the Fifth Amendment privilege. *Id*. at 35-36. Accordingly, if the Trustee cannot get New ICC records from New ICC, and if Mr. Prosser has those documents, Mr. Prosser will have to turn them over or establish how turnover is testimonial and would create a real danger of incrimination.

We note although the Prossers voluntarily previously filed inventories and Mr. Prosser, as a Debtor, filed schedules and statements of financial affairs in connection with his voluntary bankruptcy case, that fact alone does not constitute "an admission of guilt or furnish clear proof of crime" so did not constitute waiver of his Fifth Amendment privilege not to incriminate himself. *McCarthy v. Arndstein*, 262 U.S. 355, 357, *rehearing granted* 263 U.S. 676 (1923), *affirmed* 266 U.S. 34 (1924). In *McCarthy v. Arndstein* the debtor had denied that he had stocks or bonds in his possession or under his control in the year prepetition and the District Court held that the debtor's denials or partial disclosures <u>as a witness</u> did not constitute a waiver of his Fifth Amendment privilege.

We further note that the mere assertion that the act of producing a document would

---

[8](...continued)
>  when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena. The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents. Whether the constitutional privilege protects the answers to such questions, or protects the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating.

*Id*. at 36.

13

violate the witness's Fifth Amendment privilege is insufficient; the person asserting the privilege "must demonstrate that the potential for self-incrimination is real and substantial." *In re Acquisition Corp.*, 208 B.R. 323, 330 (Bankr.S.D.N.Y. 1997), *affirmed* 151 F.3d 75 (2nd Cir. 1998), citing *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472 (1972). This neither Prosser has established but we are not at the stage where the propriety of their conduct can be adjudicated.

**B.    Dawn Prosser**

   ***1.    Mrs. Prosser's Assertion of Privilege With Respect to Motion to Compel Document Production in Adv. No. 07-3010***

Exhibit A to Adversary Document 124 also includes the Trustee's request for document production directed to Dawn Prosser, a nondebtor. The requests are identical to those presented to Mr. Prosser. The same rulings pertain.

**C.    Regarding Prior Order(s) With Respect to Inventory**

The temporary restraining order (a preliminary injunction was later entered)[9] that was entered at Adversary No. 07-3010 required each defendant,[10] including Mr. and Mrs. Prosser, to produce to the Chapter 11 Trustee an inventory[11] of property acquired through the use of New

---

[9] The TRO is at Adv. Doc. No. 18. It was extended by agreement and order at Adv. Doc. No. 41. A preliminary injunction was entered at Adv. Doc. No. 79 and amended at Adv. Doc No. 81. Appeals were filed (Adv. Doc. Nos. 90, 91). Dawn Prosser filed two motions to modify the preliminary injunction, Adv. Doc. Nos. 100, 103, which Jeffrey Prosser joined, Adv. Doc. Nos. 117, 118. The court denied the motions to modify at Adv. Doc. Nos. 167, 168.

[10] Defendants included the Prossers' adult children and a brother of Jeffrey Prosser.

[11] An inventory was filed on the public record in Mr. Prosser's case, 06-30009, and later subject to being sealed. In Adversary No. 07-3010, Mrs. Prosser filed under seal an inventory as an exhibit to her Motion for Summary Judgment, Adv. Doc. No. 221. That docket entry also contained an exhibit of Mr. Prosser's Inventory of Assets, of Joint Inventory, and of ICC's

(continued...)

ICC's funds and/or through Mr. Prosser's funds of which the defendants have "knowledge, possession, custody, or control."   Adv. Doc. No. 124 at 2.  The order provided that the inventory include an accurate description of the property, the property's location, its estimated value, the source of funds used to purchase the property, and the names of any person or entity (except the Trustees and the bankruptcy estates, who have possession or claim an ownership interest in or have possession of any of the property.

Certain inventories have been produced, various battles have been joined and assertion of the Fifth Amendment with respect to information already provided may not be appropriate.  By the same token, there is no reason for the Trustee to require production of what has already been produced.

The Trustee's motion to compel demands compliance with this court's prior orders regarding production of inventory, etc.  The Trustee states in his motion to compel that he has been inspecting certain houses in which the Prossers claim an interest but wants the Prossers to obey the court's order because much of the property can easily be moved from the premises.  The Prossers filed inventories.  The Trustee has inspected the premises.  If items on the inventory are not on the premises that the Trustee has inspected or if items that the Trustee has identified at various properties are no longer there and the Trustee cannot determine where the items are, the Trustee must file an appropriate pleading that provides enough detail for this court

---

[11](...continued)
Inventory of Assets.  (ICC is Case No. 06-30008.)

15

to be able to adjudicate whether or not there has been compliance with prior orders.  The Trustee has many resources at his disposal to prevent or counter such conduct, if or when it occurs.

    An appropriate order will be entered.

DATE:  June 9, 2008

*Judith K. Fitzgerald*
Judith K. Fitzgerald      rmab
United States Bankruptcy Judge

The Trustee shall be ordered to serve a copy of this Memorandum Opinion and accompanying Order on all parties in interest who do not receive electronic notice.

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
BANKRUPTCY DIVISION
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| IN RE<br>INNOVATIVE COMMUNICATION<br>CORPORATION<br>     Debtor | Bankruptcy No. 07-30012<br>Chapter 11 |

| | |
|---|---|
| Stan Springel, Chapter 11 Trustee in<br>Case No. 07-30012, and James P.<br>Carroll, Chapter 7 Trustee in<br>Case No. 06-30009,<br>     Plaintiffs<br>v.<br><br>Jeffrey J. Prosser,<br>Dawn Prosser, Justin Prosser.<br>Michael J. Prosser, Sybil G. Prosser<br>Michelle LaBennett, Lyndon A. Prosser,<br>Lyndon A. Prosser<br>     Defendants | <br><br><br><br><br><br>Adv. No. 07-3010<br><br>**Related to** Doc. No. 124, Motion to Compel<br>Compliance with Court Orders and to<br>Compel Production of Documents filed by<br>Stan Springel, Chapter 11 Trustee |

| | |
|---|---|
| IN RE<br>JEFFREY J. PROSSER<br>     Debtor | Bankruptcy 06-30009<br>Chapter 7<br>**Related to** Doc. No. 1297, Motion to Compel<br>Jeffrey J. Prosser to Respond to Questions Pursuant<br>to Section 341 of the Bankruptcy Code and for<br>Sanctions filed by Rural Telephone Finance<br>Cooperative |

**INTERLOCUTORY ORDER WITH RESPECT TO MOTION TO COMPEL**

**AND NOW**, this **9th** day of **June**, **2008**, for the reasons stated in the foregoing

Memorandum Opinion, it is **ORDERED** that

1.     In Case No. 06-30009

1

The RTFC's motion to compel responses to questions asked at the §341 meeting is **granted in part and denied in part**, to-wit, to the extent that Mr. Prosser previously answered questions, he has waived the Fifth Amendment with respect to questions on the same subject matter. However, it is **FURTHER ORDERED** that to the extent the questions were previously asked and answered, the questions need not be answered again.

It is **FURTHER ORDERED** that the RTFC's request for sanctions is **denied**.

2.  <u>In Adv. 07-3010</u>

The Chapter 11 Trustee's motion to compel production of corporate documents is **denied without prejudice** inasmuch as the Trustee has not established that any documents are unavailable to him. With respect to Mr. Prosser's status as custodian of corporate records his assertion of the Fifth Amendment appears not to be proper in that he has not established that production would be testimonial and tend to incriminate him.

**Further**, neither the Trustee nor either of the Prossers has provided specific information as to whether there are corporate documents that the Trustee allegedly does not have and that either Prosser allegedly has. Therefore, it is **ORDERED** that the Trustee shall attempt to obtain any corporate documents he does not have from sources other than the Prossers and, if unsuccessful and he so chooses, the Trustee may subpoena same. If either Prosser again asserts the Fifth Amendment, the party so asserting must specify how production of any corporate document in his or her possession, custody or control is testimonial and will violate his or her Fifth Amendment privilege.

It is **FURTHER ORDERED** that, in the event that either of the Prossers asserts a testimonial Fifth Amendment privilege with respect to any such corporate documents, each party

2

so asserting shall produce to Chambers in Pittsburgh *in camera* a list of such documents **and** a copy of each document. The list of documents shall contain an explanation of the testimonial nature of each document. The Court will review the list and the documents as provided in *In re DG Acquisition Corp.*, 208 B.R. 323 (Bankr.S.D.N.Y. 1997).

It is **FURTHER ORDERED** that, with respect to personal documents, the the Trustee's motion is **denied without prejudice** and the Trustee must first seek the documents from other sources and if unsuccessful, and he so chooses, may subpoena them. If either Prosser again asserts the Fifth Amendment with respect to those documents the party so asserting must specify how production will violate his or her Fifth Amendment privilege. The Court will hold a status conference to set a process, if necessary, for review of documents *in camera*. *See In re DG Acquisition Corp.*, 208 B.R. 323 (Bankr.S.D.N.Y. 1997)(court inspected documents *in camera* when nondebtor spouses asserted Fifth Amendment in response to document production request).

It is **FURTHER ORDERED** that the Trustee shall immediately serve a copy of this Memorandum Opinion and accompanying Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

*Judith K. Fitzgerald*  **rmab**
Judith K. Fitzgerald
United States Bankruptcy Judge

3